PEOPLE v URIEL

PEOPLE v NELSON

1. ADMINISTRATIVE LAW—DELEGATION OF POWERS.

The Legislature cannot delegate its power to make a law; it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.

2. ADMINISTRATIVE LAW—DELEGATION OF POWERS—STATUTES.

The guiding principles in determining whether a statute provides sufficient standards for the exercise of discretion by an administrative official are: (1) the statutory provision in question should not be isolated but must be construed with reference to the entire act; (2) the standard should be as reasonably precise as the subject matter requires or permits; and (3) if possible the statute must be construed in such a way as to render it valid, not invalid, as conferring administrative, not legislative power, and as vesting discretionary, not arbitrary, authority.

3. DRUGS AND NARCOTICS—CONTROLLED SUBSTANCES ACT—DELEGA-
TION OF LEGISLATIVE POWERS—BOARD OF PHARMACY—ADMINIS-
TRATIVE AGENCY.

The provisions of the Controlled Substances Act which allow the State Board of Pharmacy to add controlled substances to the schedules of proscribed substances do not constitute an unlawful delegation of legislative power to an administrative agency (MCLA 335.315; MSA 18.1070[15]).

Appeals from Oakland, William John Beer, J. Submitted March 7, 1977, at Lansing. (Docket Nos. 27202, 27203.) Decided June 6, 1977. Leave to appeal applied for.

David Uriel and Mark Nelson were charged

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 1 Am Jur 2d, Administrative Law § 102.
  16 Am Jur 2d, Constitutional Law §§ 227, 240–242, 248.
[3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 7,13.

with delivery of a controlled substance. Defendants moved for dismissal. Motion granted. The people appeal. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Becker & Zipser, P. C.,* for defendants.

Before: QUINN, P. J., and BRONSON and M. J. KELLY, JJ.

M. J. KELLY, J. Defendants were charged with delivery of a controlled substance, MCLA 335.341(1)(b); MSA 18.1070(41)(1)(b) and MCLA 335.316; MSA 18.1070(16). Following the preliminary examination defendants moved to dismiss on the ground that MCLA 335.311; MSA 18.1070(11) constituted an unlawful delegation of legislative power to an administrative agency. The district court agreed with defendants' assertion, but considered defendants' motion intertwined with the Administrative Procedures Act, MCLA 24.201, *et seq.;* MSA 3.560(101), *et seq.* and as such believed exclusive jurisdiction was vested in the circuit court. It thus certified the motion to Oakland County Circuit Court. In the circuit court, defendants' motion to dismiss was renewed and granted by order dated January 6, 1976. The people appeal from this dismissal.

Defendants were charged with delivery of methaqualone. This drug, although not specified as a controlled substance in schedule 2, MCLA 335.316; MSA 18.1070(16), was added as a schedule 2 con-

trolled substance pursuant to MCLA 335.315; MSA 18.1070(15). This section states:

"The administrator shall place a substance in schedule 2 if it finds all of the following:

(a) The substance has high potential for abuse.

(b) The substance has currently accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions.

(c) The abuse of the substance may lead to severe psychic or physical dependence.

The administrator is the State Board of Pharmacy, MCLA 335.303(2); MSA 18.1070(3)(2), which designated methaqualone as a schedule 2 depressant. 1974 AACS, R 338.3119, 1973 AACS, R 338.3119.

Further, MCLA 335.311(1); MSA 18.1070(11)(1) of the Controlled Substances Act, MCLA 335.301, *et seq.;* MSA 18.1070(1) *et seq.,* allows the administrator to add, delete or reschedule substances. It reads in relevant part as follows regarding the standards to be applied:

"In making a determination regarding a substance, the administrator shall consider all of the following:

"(a) The actual or relative potential for abuse.

"(b) The scientific evidence of its pharmacological effect, if known.

"(c) The state of current scientific knowledge regarding the substance.

"(d) The history and current pattern of abuse.

"(e) The scope, duration and significance of abuse.

"(f) The risk to the public health.

"(g) The potential of the substance to produce psychic or physiological dependence liability.

"(h) Whether the substance is an immediate precursor of a substance already controlled under this chapter." MCLA 335.311; MSA 18.1070(11).

The issue is whether the provisions of the Controlled Substances Act that allow the State Board of Pharmacy to add controlled substances to the schedules of proscribed substances constitute an unlawful delegation of legislative power to an administrative agency. Both the district court and the circuit court found an unlawful delegation of legislative power. This issue appears to be one of first impression in this state.

In *Department of Natural Resources v Seaman,* 396 Mich 299, 308–309; 240 NW2d 206 (1976), the Court set forth the following regarding a claim that a statute was an unlawful delegation of legislative power:

"The rule with regard to delegation was simply and aptly stated in the leading case of *Locke's Appeal,* 72 Pa 491, 498–499 (1873):

" 'The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government.'

\* \* \*

"While no hard and fast rule exists for determining whether a given statute has provided sufficient standards, a number of guiding principles have evolved in Michigan jurisprudence to assist in making a determination in this case.

"First, the act in question must be read as a whole; the provision in question should not be isolated but must be construed with reference to the entire act. *Argo Oil Corp v Atwood, supra,* 53. [274 Mich 47, 52; 264 NW 285 (1935)].

"Second, the standard should be 'as reasonably precise as the subject matter requires or permits'. *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25; 58 ALR2d 1079 (1956).

"The preciseness of the standard will vary with the

complexity and/or the degree to which subject regulated will require constantly changing regulation. The 'various' and 'varying' detail associated with managing the natural resources has led to recognition by the courts that it is impractical for the Legislature to provide specific regulations and that this function must be performed by the designated administrative officials. *People v Soule,* 238 Mich 130, 140; 213 NW 195 (1927). See *United States v Grimaud,* 220 US 506; 31 S Ct 480; 55 L Ed 563 (1910).

"Third, if possible the statute must be construed in such a way as to 'render it valid, not invalid', as conferring 'administrative, not legislative' power and as vesting 'discretionary, not arbitrary, authority'. *Argo Oil Corp v Atwood, supra,* 53." (footnotes omitted).

We apply *Seaman, supra,* to the present case. Reading the Controlled Substances Act as a whole, we find the standards provided to the Board of Pharmacy "as reasonably precise as the subject matter requires or permits". The act contains five schedules listing various controlled substances and provides the board with specific grounds for listing a substance in a particular schedule. For example, if the board finds that a substance has (a) a high potential for abuse, and (b) has no accepted medical use in treatment in the United States or lacks safety for use in treatment under medical supervision, the board is required to place that substance in schedule 1. MCLA 335.313; MSA 18.1070(13). MCLA 338.1102; MSA 14.757(2) provides that the Board of Pharmacy shall consist of seven members, six of which shall be registered pharmacists licensed in the state for at least five years, actively engaged in the practice of pharmacy and graduates of a recognized college of pharmacy and the seventh shall be a representative of the general public. Further, MCLA 335.311(5); MSA 18.1070(11)(5) of the act establishes

"a 6-member scientific advisory commission to serve as

a consultative and advising body to the administrator in all matters relating to the classification, reclassification, addition to or deletion from, of all substances presently classified as controlled substances in schedules 1 to 5, or substances not presently controlled or yet to come into being. The scientific advisory commission shall be made up of 2 physicians to be appointed by the director of the department of health; 2 pharmacists to be appointed by the director of the department of licensing and regulation; the chief of the crime detection laboratory of the department of public health, and the director of the department of state police or his designee."

The board is not without other sufficient guidelines. MCLA 335.311(1) provides the board with various factors which are required to be considered by the board in making a determination regarding a substance and in each particular schedule the Legislature has listed specific substances which the board can use as a guide in listing a substance.[1]

We are mindful that the Controlled Substances Act must, if possible, be construed in such a way as to render it valid as conferring and vesting discretionary administrative authority. We feel that the need for both legislative and administrative flexibility is essential in order to deal with the amorphous and ubiquitous drug abuse problem. We hold that the Controlled Substances Act of 1971 is not an unconstitutional delegation of legislative power to the Board of Pharmacy, rather we find the act to contain adequate standards and guidelines which are readily understandable to experienced pharmacists.

Other jurisdictions have held likewise. The Controlled Substances Act is a Uniform Act which has been adopted by 42 states, the Virgin Islands and

---

[1] We note, as the plaintiff points out in its brief on appeal, that the district court's concern over coffee being listed as a controlled substance is obviated by MCLA 335.311(7); MSA 18.1070(11)(7).

Puerto Rico.[2] The majority of jurisdictions which have considered this issue have upheld the statutory scheme, holding that the standards contained in their Controlled Substances Acts are sufficiently precise to withstand the delegation of power challenge.[3]

Reversed and remanded for trial.

[2] 9 ULA Matr, Fam & Health Laws (1976 Supp), p 33.

[3] *See People v Einhorn,* 75 Misc 2d 183; 346 NYS2d 986 (Sup Ct, 1973), *State v Lisk,* 21 NC App 474; 204 SE2d 868 (1974), *lv den,* 285 NC 666; 207 SE2d 759 (1974), *Cassell v State,* 55 Ala App 502; 317 So 2d 348 (Crim App, 1975). *See also White v United States,* 395 F2d 5 (CA 1, 1968), *cert den,* 393 US 928; 89 S Ct 260; 21 L Ed 2d 266 (1968), *Iske v United States,* 396 F2d 28 (CA 10, 1968), *State v Sargent,* 252 Or 579; 449 P2d 845 (1969), *State v Boyajian,* 344 A2d 410 (Me, 1975). *Contra, Howell v State,* 300 So 2d 774 (Miss, 1974), *Sundberg v State,* 234 Ga 482; 216 SE2d 332 (1975).