379 So.2d 1084 (1980)
STATE of Louisiana
v.
Larry RODRIGUEZ.
No. 65323.
Supreme Court of Louisiana.
January 28, 1980.
*1085 Clyde D. Merritt, Tilden, Greenbaum, Alvin Johnson, Orleans Indigent Defender Program, New Orleans, for defendant-respondent.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Julie C. LeBlanc, Louise Korns, Asst. Dist. Attys., for plaintiff-relator.
DIXON, Justice.
On June 4, 1979 defendant was arrested and charged by bill of information with a violation of R.S. 40:967, possession of pentazocine (Talwin), a controlled dangerous substance. Defendant filed a motion to quash the bill on the grounds that R.S. 40:962(B) was invalid as an unconstitutional delegation of legislative authority to the executive branch of the state government and that sufficient notice was not given defendant of the conduct prescribed, thus depriving him of due process of law. The trial judge granted defendant's motion to quash and the state's application for a writ of certiorari was granted.
R.S. 40:962(B) provides:
"The secretary of the Department of Health and Human Resources shall add a substance as a controlled dangerous substance if it is classified as a controlled dangerous substance by the Drug Enforcement Administration of the United States government."
Talwin was classified as a controlled dangerous substance by the Drug Enforcement Administration of the United States on February 9, 1979 and was then added to the Louisiana list of controlled dangerous substances on February 14, 1979 pursuant to R.S. 40:962(B). A bill was introduced into the 1979 Louisiana legislature to affirm this action. The legislature passed Act 659 adding Talwin to the list of controlled dangerous substances. The effective date of this legislation was September 7, 1979. The question to be decided is whether the legislature exceeded its authority in delegating to the Secretary of the Department of Health and Human Resources the authority to proceed as it did under R.S. 40:962(B).
Article II, § 1 of the 1974 Louisiana Constitution divides the powers of government into three separate branches: legislative, executive and judicial. Article II, § 2 provides that no one of these branches may exercise power belonging to either of the others. The legislative power of the state is vested exclusively in the elected legislature. Article III, § 1. The executive branch of the government consists of all executive offices, agencies and instrumentalities of the state. Article IV, § 1. The Department of Health and Human Resources is an agency and is therefore a part of the executive branch of the government.
R.S. 14:7 provides that a crime in Louisiana is that conduct which is defined as criminal in the Criminal Code, or in other acts of the legislature, or in the Constitution of this state. It is well settled in Louisiana jurisprudence that the determination and definition of acts which are punishable as crimes are purely legislative functions. State v. Gyles, 313 So.2d 799 (La. 1975); State v. Vaccaro, 200 La. 475, 8 So.2d 299 (1942). Another equally well established rule is that the legislative power to create and define offenses cannot be delegated.[1] In City of Shreveport v. Price, *1086 142 La. 936, 946, 77 So. 883, 886 (1918), this court held: "The general rule is that the legislative power cannot be delegated." An exception to that rule was recognized by the United States Supreme Court in United States v. Shreveport Grain and Elevator Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932), where the court held that although the legislative power of Congress cannot be delegated, Congress may declare its will, and, after fixing a primary standard, devolve upon administrative officers the power to "fill up the details" by prescribing administrative rules and regulations. The Louisiana Supreme Court recognized the same exception in State v. Guidry, 142 La. 422, 76 So. 843 (1917), where the court held that the legislative branch has the authority to delegate to administrative boards and agencies of the state the power to ascertain and determine the facts upon which the laws are to be applied and enforced.[2]
In determining whether a particular delegation of legislative authority is unconstitutional this court has relied on the rule established in the case of Schwegmann Brothers Giant Super Markets v. McCrory, Commissioner of Agriculture, 237 La. 768, 788, 112 So.2d 606, 613 (1959):
"... So long as the regulation or action of the official or board authorized by statute does not in effect determine what the law shall be, or involve the exercise of primary and independent discretion, but only determines within prescribed limits some fact upon which the law by its own terms operates, such regulation is administrative and not legislative in its nature...."[3]
This rule requires that the legislature establish by statute standards for the guidance of the executive or administrative body or officer empowered to execute the law. This principle is implicit in the general rule prohibiting the delegation of legislative authority, and is affirmed in numerous cases decided by this court. See State v. Morgan, 238 La. 829, 116 So.2d 682 (1960); National Bank of Commerce v. Louisiana State University, 206 La. 913, 20 So.2d 264 (1944); City of Baton Rouge v. Shilg, 198 La. 994, 5 So.2d 312 (1941). In these cases this court stated that where a statute vests arbitrary discretion in a board or an official without prescribing standards of guidance there is an unconstitutional delegation of legislative authority to the executive branch of the government.
The state contends that the action taken by the Secretary of the Department of Health and Human Resources was mandated, and not merely permitted, by the legislature, and thus did not amount to action taken under a delegation of authority, but rather an action required by the legislature once the Drug Enforcement Administration placed the substance on their list. R.S. 40:962(B) sets up a scheme whereupon the secretary has the authority to add a substance to the Louisiana list of controlled dangerous substances, and once a substance is so listed it becomes a crime to possess or distribute the substance. In this *1087 section of the statute there are no standards or criteria to guide the secretary, who merely adds to the contraband list the substances found dangerous by the federal agency. (In contrast, see R.S. 40:962(C)). The absence of standards for the secretary to determine the characteristics of the new dangerous substances results in a surrender of legislative power. The legislature may confer ministerial powers upon executive agencies if it supplies adequate standards to execute the legislative policy; however it cannot surrender the legislative power itself to determine what the law shall be.
This prohibition against delegating the power to create crimes applies not only to a delegation to a state agency, such as the Department of Health and Human Resources, but to any other agency or body, such as the Drug Enforcement Administration. The Louisiana legislature is not authorized to delegate its legislative power to a federal agency, nor to Congress. Congress has established, in 21 U.S.C. § 811,[4] standards under which the Attorney General (transferred to the Drug Enforcement Administration, 38 Fed.Reg. 18357 (1973)) and the Secretary of Health, Education and Welfare may act in adding new contraband drugs. Even though the Drug Enforcement Administration is governed by such congressional standards, Louisiana cannot delegate to it the power to make the possession of certain drugs a crime.
R.S. 40:962(B) is therefore unconstitutional.[5]
The judgment of the district court quashing the indictment against the defendant is affirmed, and the prosecution is dismissed.
MARCUS and BLANCHE, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
La.R.S. 40:962(B) makes it mandatory for the Department of Health and Human Resources to add a substance as a controlled dangerous substance if it is classified as such by the Drug Enforcement Administration. In effect, the legislature has adopted the standards established by Congress by which the federal agency (DEA) is governed in classifying a new contraband drug and then makes it mandatory for the Department of Health and Human Resources to add the substance to its list when DEA has classified the substance as a controlled dangerous substance. I do not consider this to be an improper delegation of legislative authority. Accordingly, I respectfully dissent.
BLANCHE, Justice (dissenting).
I respectfully dissent. The legislature may not delegate purely legislative power, but it may with certain qualifications, delegate *1088 to an administrative agency the authority necessary to implement the expressed policy and purpose of a given statute. State v. Edwards, 572 S.W.2d 917 (Tenn.1978); Cf. American Power Co. v. S. E. C., 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946); Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939). I agree that "the legislature in doing so must establish by statute standards for the guidance of the executive/administrative body or officer empowered to execute the law". I find, however, that the statute in question does provide sufficient guidelines and standards to prevent arbitrary action by the agency. The exercise of discretion is not with the agency, since in this particular section, the Department of Health and Human Resources is mandated to act once it receives information that a drug is classified as a controlled dangerous substance by the Drug Enforcement Administration of the U.S. Government. Thus, their placing of the drug on the controlled substance list was a purely ministerial function meant to implement a policy decision already made by the legislature. Therefore, this statute does not delegate the authority to define crimes; rather, it is a delegation of authority to find facts/determine the existence of a factual situation on which the operation of a law is made dependent. State v. Blackburn, 21 N.C.App. 517, 204 S.E.2d 866 (1974).
Our statute is patterned after the Uniform Controlled Substances Act which has been adopted by 46 states, the Virgin Islands and Puerto Rico. The majority of these jurisdictions have held that the Act is not an unconstitutional delegation of legislative power. See People v. Uriel, 76 Mich. App. 102, 255 N.W.2d 788 (1977); People v. Einhorn, 75 Misc.2d 183, 346 N.Y.S.2d 986 (1973); State v. Lisk, 21 N.C.App. 474, 204 S.E.2d 868 (1974); Cassell v. State, 55 Ala. App. 502, 317 So.2d 348 (Cr.App.1975).
NOTES
[1] For cases where this court has held that the legislature improperly delegated the authority to create offenses to the executive branch of the government, see State v. Maitrejean, 193 La. 824, 192 So. 361 (1939); State v. Billot, 154 La. 402, 97 So. 589 (1923).

This court has held that the legislature improperly delegated the authority to define crimes to the courts in State v. Arkansas Louisiana Gas Co., 227 La. 179, 78 So.2d 825 (1955); State v. Truby, 211 La. 178, 29 So.2d 758 (1947); State v. Whitlock, 193 La. 1044, 192 So. 697 (1939); State v. Gaster, 45 La.Ann. 636, 12 So. 739 (1893).
See City of Alexandria v. Alexandria Fire Fighters Ass'n, 220 La. 754, 57 So.2d 673 (1952); State v. Watkins, 176 La. 837, 147 So. 8 (1933) for cases in which the legislative power to change the law was held to have been improperly delegated to the people of this state.
[2] The court in Guidry held that a statute delegating to the conservation commission the authority to determine whether certain areas contained natural oyster reefs, as defined in another statute, was not a delegation of a legislative function. For another example of a proper delegation to the conservation commission, see State v. Carson Carbon Co., 162 La. 781, 111 So. 162 (1927).
[3] For other cases where this court has held that the delegation of authority was ministerial in nature and not legislative, and therefore proper, see State ex rel. Guste v. Legislative Budget Committee, 347 So.2d 160 (La. 1977); State v. Everfield, 342 So.2d 648 (La. 1977); Carso v. Board of Liquidation of State Debt, 205 La. 368, 17 So.2d 358 (1944); Fernandez v. Alford, 203 La. 111, 13 So.2d 483 (1943).

For examples of delegations of legislative authority to administrative boards which have been upheld as within the police power of the state, see Johnson v. Pearce, 313 So.2d 812 (La. 1975); City of Lake Charles v. Wallace, 247 La. 285, 170 So.2d 654 (1965); Baton Rouge Waterworks Co. v. Louisiana Public Service Commission, 156 La. 539, 100 So. 710 (1924); State v. Syas, 136 La. 628, 67 So. 522 (1915); State v. Snyder, 131 La. 145, 59 So. 44 (1912); State v. Harper, 42 La.Ann. 312, 7 So. 446 (1890).
[4] The federal statute delegates similar powers to the Attorney General to add to the federal controlled dangerous drug schedules. However, it allows the Attorney General to add a substance to the list only after he has made certain findings listed in the statute and has complied with the Administrative Procedure Act. (5 U.S.C. § 551 et seq.). The Attorney General, before acting, must receive from the Secretary of Health, Education and Welfare a scientific and medical evaluation and recommendation whether a drug should be controlled. In determining whether to control a particular substance, both the Secretary of Health, Education and Welfare and the Attorney General must consider certain criteria provided in the statute.

The federal scheme has been upheld in United States v. Gordon, 580 F.2d 827 (5th Cir. 1978) and in United States v. Pastor, 557 F.2d 930 (2 Cir. 1977), as being a proper delegation of authority because the statute contains sufficient guidelines and standards because of the factors which must be considered before a drug can be controlled, and because of the protections of the Administrative Procedure Act. R.S. 40:962(B) provides no such standards or protections which are found in the federal act, nor in R.S. 40:962(C).
[5] In Howell v. Mississippi, 300 So.2d 774 (1974), the Mississippi Supreme Court held unconstitutional a portion of a state statute which had permitted the State Board of Health to schedule substances, administratively, much as the Secretary of Health and Human Resources does under R.S. 40:962(B). The Mississippi court held that the attempted delegation to the State Board of Health was contrary to the Mississippi Constitution, which prohibited any one of the three departments of the state government from exercising any power belonging to the other departments.