PEOPLE v PORTERFIELD

Docket No. 58834. Submitted June 20, 1983, at Detroit.—Decided
August 16, 1983. Leave to appeal applied for.

Defendant, Amos Porterfield, was convicted of conspiracy to
deliver over 50 grams of a controlled substance following a jury
trial in Wayne Circuit Court, Thomas Roumell, J. Defendant
appeals raising several issues. *Held:*

1. The statutory scheme contained in the controlled sub-
stances section of the Public Health Code which provides a
punishment according to the weight and not the purity of a
controlled substance mixture does not deny equal protection of
the law.

2. The controlled substances act does not violate the title-
object clause of the Michigan Constitution.

3. Defendant's claim that the prosecutor made erroneous
civic duty arguments and references to the evils of heroin in
closing argument is without merit. There was no error in the
trial court's refusal to give a curative instruction. The court's
instructions at trial essentially covered what was requested by
defense counsel.

4. There was sufficient evidence presented to establish that
the defendant had the intent to deliver over 50 grams of a
mixture containing heroin and also had the intent to combine
with others to deliver over 50 grams of a mixture containing
heroin. There was sufficient evidence that the coconspirators
each had the intent to deliver over 50 grams of a mixture
containing heroin and the intent to combine for the purpose of
delivering over 50 grams of a mixture containing heroin.

5. The multiple transactions were part of an ongoing conspir-
acy to deliver over 50 grams of a mixture containing heroin
rather than multiple separate conspiracies to deliver amounts
under 50 grams.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 594.
    25 Am Jur 2d, Drugs, Narcotics, and Poisons § 17.
[2] 73 Am Jur 2d, Statutes § 113.
[3] 5 Am Jur 2d, Appeal and Error § 883.

1. CONTROLLED SUBSTANCES — PUBLIC HEALTH CODE — CONSTITU-
   TIONAL LAW — EQUAL PROTECTION.

   The classification scheme contained in the controlled substances
   provisions of the Public Health Code whereby the severity of
   the punishment for a crime is based upon the weight of a
   mixture containing a controlled substance rather than on the
   weight of the pure substance contained in the mixture is not
   violative of equal protection (MCL 333.7401[2][a][iii]; MSA
   14.15[7401][2][a][iii]).

2. CONTROLLED SUBSTANCES — PUBLIC HEALTH CODE — CONSTITU-
   TIONAL LAW — TITLE-OBJECT CLAUSE.

   The controlled substances provisions of the Public Health Code do
   not violate the title-object clause of the Michigan Constitution
   (Const 1963, art 4, § 24; MCL 333.7101 et seq.; MSA 14.15[7101]
   et seq.).

3. CRIMINAL LAW — APPEAL.

   A reviewing court, in determining whether sufficient evidence
   was presented to support a conviction, must view the evidence
   in a light most favorable to the prosecution, and where the
   record reveals that a rational trier of fact could have found
   that the essential elements of the crime were proven beyond a
   reasonable doubt the conviction will be upheld.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Rolf E. Berg),* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and WAHLS and M. E. DODGE,* JJ.

V. J. BRENNAN, P.J. After a jury trial, the defendant was convicted of conspiracy to deliver over 50 grams of a controlled substance, MCL 750.157a; MSA 28.354(1) and MCL 333.7401(2)(a)(iii); MSA

* Circuit judge, sitting on the Court of Appeals by assignment.

14.15(7401)(2)(a)(iii). Defendant was sentenced to 10 to 20 years in prison. Thereafter, the trial court denied the defendant's motion for a new trial.

We first reject the defendant's claims: (1) that he was denied equal protection of the law because the statutory scheme punishes weight and not purity of the controlled substance mixture; and (2) that the controlled substances act violates the title-object clause of the Michigan Constitution. Defendant's arguments have been addressed by this Court on numerous occasions and rejected. See *People v Puertas,* 122 Mich App 626; 332 NW2d 399 (1983); *People v Campbell,* 115 Mich App 369; 320 NW2d 381 (1982); *People v Prediger,* 110 Mich App 757; 313 NW2d 103 (1981); *People v Lemble,* 103 Mich App 220; 303 NW2d 191 (1981), *lv den* 412 Mich 888 (1981). Also, see *People v Berry,* 123 Mich App 237; 333 NW2d 234 (1983); *People v Key,* 121 Mich App 168; 328 NW2d 609 (1982); *People v Swindlehurst,* 120 Mich App 606; 328 NW2d 92 (1982); *People v Trupiano,* 97 Mich App 416; 296 NW2d 49 (1980), *lv den* 409 Mich 895 (1980).

Next, the defendant claims that the prosecutor made civic duty arguments and references to the evils of heroin in closing argument which constituted reversible error because the defendant objected and his request for a curative instruction was denied.

We have reviewed the defendant's claim and find it to be without merit. When reading the prosecutor's comments as a whole and in the context in which they were made, it does not appear that the complained-of conduct amounted to an impermissible "civic duty" argument. Furthermore, the prosecutor did not play upon the jurors' fears of illegal heroin traffic and did not

stress that the jurors had to convict the defendant in order to alleviate the effects of narcotics. This conclusion is borne out by the fact that the jury acquitted a codefendant of the same charges. In addition, we find no error in the trial court's refusal to give a curative instruction. The court's instructions at trial essentially covered what was requested by defense counsel.

Defendant's final claim is that there was insufficient evidence presented to establish *one* conspiracy to deliver over 50 grams of heroin rather than a series of lesser conspiracies to deliver smaller amounts of heroin. Defendant maintains that the evidence merely showed day-to-day operations in which there were no outstanding agreements between the parties beyond the consignment sale of 10 to 20 coin envelopes which held a mixture containing heroin to the two runners whose testimony at trial provided the primary evidence against the defendant.

In determining whether there was sufficient evidence to support the defendant's conviction, the reviewing court views the evidence in a light most favorable to the prosecution and determines whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Gregory Johnson,* 112 Mich App 483, 489; 316 NW2d 247 (1982).

The issue to be determined is whether there was sufficient evidence to prove that the defendant had the intent to deliver over 50 grams of a mixture containing heroin and also whether he had the intent to combine with others to deliver over 50 grams of a mixture containing heroin. Furthermore, it must be shown that the coconspirators each had the intent to deliver over 50 grams of a

mixture containing heroin and the intent to combine for the purpose of delivering over 50 grams of a mixture containing heroin. Defendant claims that there was no such predetermined concert of action between the parties alleged to be members of the conspiracy. The defendant maintains that the accumulation of the alleged multiple transactions into one general conspiracy did not demonstrate a meeting of the minds.

We find that there was sufficient evidence that the defendant had the intent to deliver over 50 grams of a mixture containing heroin. Testimony established that the heroin delivery operation occurred almost daily. Heroin in one-quarter-ounce quantities was frequently cut and mixed by the defendant with the object of selling the mixture on the street soon thereafter. When the quarter ounce was sold (the aim was 90 bags per quarter ounce), the defendant cut and mixed more for sale. When the heroin supply dwindled or dried up, there were ways in which more could be obtained in order for sales to be made either that day or the next. Michael Williams, who was a runner for the defendant, testified that he sold approximately 90 bags per day for the defendant and Tommy Facen, another runner, testified that he sometimes received one or two bundles (10 to 11 bags of heroin per bundle) or from two to four bundles depending upon the supply. Although Williams could not estimate how much money he made each week, Facen testified that he sold approximately $1,000 worth of heroin each week (his profits would have been approximately $200 per week if he received $2.50 per packet). Williams's increased drug usage would have accounted for less profit on his part. Also, a witness from an office supply company testified that the defendant frequently purchased

large quantities of coin envelopes and Williams testified that there were 500 envelopes to a box and he was present when defendant purchased three boxes of envelopes. A chemist testified that a little less than approximately 200 packets of heroin (coin envelopes or bags) would total 50 grams of heroin. Two ounces of heroin would equal 56 grams. A reasonable trier of fact could easily have inferred that the defendant had the intent to deliver over 50 grams of a mixture containing heroin.

We also find that there was sufficient evidence to establish defendant's intent to combine with others to deliver over 50 grams of a mixture containing heroin. Although a codefendant was acquitted, testimony established that there was an intent to combine with Facen and Williams to deliver the narcotics. Furthermore, the testimony also indicated that defendant introduced Williams to established customers so that Williams could be trusted on the street. Facen and Williams helped package the merchandise for sale. Facen received the heroin from either Williams or the defendant. Both Williams and Facen's testimony tended to show that the sales were not isolated incidents designed for a quick profit but were part of an ongoing venture to deliver heroin as long as it could be supplied, and sales were made in different areas where there would be known customers.

Furthermore, there was sufficient evidence to prove beyond a reasonable doubt that the coconspirators, Facen and Williams, combined with the defendant, each having the knowledge that they were going to deliver and continue to deliver heroin for profit. The evidence established that both Facen and Williams had the requisite intent to commit the crime of delivery of a controlled substance.

Thus, we find that there was sufficient evidence to support the defendant's conviction.

Defendant also claims that it was error to charge him with an ongoing conspiracy to deliver over 50 grams of a mixture containing heroin rather than multiple separate conspiracies to deliver amounts under 50 grams. Defendant bases his argument solely upon the fact that the alleged separate transactions could not be aggregated to show that there was an agreement to deliver over 50 grams of a mixture containing a controlled substance.

We find the defendant's argument to be without merit. The alleged separate transactions are smaller conspiracies constituting parts of a "single scheme or plan". The overall conspiracy to deliver over 50 grams of a substance containing heroin included the mixing, packaging, delivery and sale of narcotics on almost a daily basis which contributed to the promotion of a continuing conspiracy to deliver more than 50 grams and these actions were not separate transactions. The multiple transactions were part of the ongoing conspiracy to deliver over 50 grams of a mixture containing heroin.

Affirmed.